**Affirmed and Memorandum Opinion filed July 18, 2019.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-18-00262-CV

**BLAYNE D. WILLIAMS, SR., Appellant**

**V.**

**CITY OF AUSTIN, Appellee**

**On Appeal from the 98th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-15-002351**

## M E M O R A N D U M   O P I N I O N

Blayne D. Williams, Sr. appeals the trial court's determination that it did not have subject matter jurisdiction over Williams's appeal from an independent hearing examiner's award. The independent hearing examiner had determined that the chief of police for the City of Austin had a valid reason to bypass Williams three times for promotion within the police department. In three issues, Williams contends that the trial court erred in granting the City's plea to the jurisdiction. We

affirm.[1]

## *Background*

Williams joined the Austin Police Department in 2006 as a civilian employee and became a commissioned officer in June 2008. In February 2011, he was involved in an off-duty incident at an H.E.B. grocery store that allegedly involved a physical altercation with an H.E.B. employee. Williams agreed to serve a 90-day suspension and a one-year probation period related to this incident. Subsequently, in February 2014, Williams sought and received an expunction order from a district court, requiring the expunction of certain information pertaining to the H.E.B. incident.[2]

In August 2013, Williams passed the written examination for promotion to the rank of corporal or detective.[3] His name therefore was placed on the promotion eligibility list. However, on October 2, 2013, Williams was placed on indefinite suspension upon being charged with dishonesty and neglect of duty based on another off-duty incident.[4] This second incident occurred while Williams was working a department-approved security job at a hotel and involved an allegation that Williams failed to report that a crime had occurred at the hotel and failed to

---

[1] The Texas Supreme Court transferred this case from the Third Court of Appeals. We must therefore decide the case in accordance with the precedent of the Third Court of Appeals if our decisions otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

[2] The remedy of expunction allows a person who has been arrested to have all records and files relating to the arrest removed from the State's records if he meets the statutory requirements set out in the expunction statute, chapter 55 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. arts. 55.01-.06; *Tex. Dep't of Pub. Safety v. Nail*, 305 S.W.3d 673, 674 (Tex. App.—Austin 2010, no pet.).

[3] Within the department, corporal and detective are apparently equal ranks with different responsibilities.

[4] "An indefinite suspension is equivalent to dismissal from the department." Tex. Loc. Gov't Code § 143.052(b).

2

secure possible evidence of that crime. Williams appealed his indefinite suspension to an independent hearing examiner.

By May 5, 2014, while his appeal of the indefinite suspension was pending, Williams's name had risen to the top of the promotion eligibility list. At that time, there were three open positions to be filled from the list. Under Texas Local Government Code section 143.036(f), unless the department head has a "valid reason" for not appointing the person at the top of the eligibility list when a position becomes open, that person must be appointed to fill the vacancy. Tex. Loc. Gov't Code § 143.036(f). Austin Police Department Policy 919 also specifically authorizes the Austin Chief of Police to bypass candidates on a promotional eligibility list for a "valid reason."[5]

Austin Police Chief Art Acevedo decided to bypass Williams three times and instead promoted three other officers to fill the vacancies. If a candidate for promotion has been bypassed three times and the bypasses are not overturned on appeal, the person's name is removed from the eligibility list. *Id*. § 143.036(g). Acevedo explained his decision to Williams in part by citing Williams's indefinite suspension and prior disciplinary history. Williams also appealed this decision to an independent hearing examiner.

During the pendency of William's appeal of the promotional bypass, the hearing examiner in Williams's appeal of his indefinite suspension issued his opinion. In the opinion, the hearing examiner upheld the dishonesty charge but not the neglect of duty charge and reduced the discipline from an indefinite suspension to a 15-day suspension. Williams thereafter returned to active duty but not at a

---

[5] As will be discussed below, Williams contends that various sections of the Local Government Code, as well as Policy 919, were preempted by the Meet and Confer Agreement between the City and Austin Police Association.

higher rank.

The hearing examiner on Williams's appeal of the promotional bypass, I.B. Helburn, issued his opinion on June 8, 2015. The parties had stipulated the issue in the appeal as whether Chief Acevedo had a valid reason to bypass Williams three times for promotion to the rank of detective or corporal. Helburn determined that Acevedo in fact had a valid reason to bypass Williams and denied the appeal. Helburn noted in the opinion that the promotional bypass memorandum Acevedo gave to Williams contained information regarding the H.E.B. incident that should have been expunged pursuant to the district court's expunction order. He further pointed out, however, that Acevedo "testified, credibly" that in making the bypass determination, he considered the indefinite suspension itself and the related policy violations. Helburn then concluded that the information that had been improperly included in the bypass memorandum "cannot be said to have influenced the decision to bypass" Williams.

Williams thereafter filed an appeal of Helburn's decision in the court below. In his petition, Williams makes a number of allegations about the process, most notably for our purposes that a city attorney impermissibly provided Helburn with evidence prior to the hearing, the Meet and Confer Agreement between the City and the Austin Police Association preempted certain portions of the Local Government Code and internal department policies on which Helburn based his decision, and information that should have been expunged was improperly before Helburn. The City filed a plea to the jurisdiction challenging the trial court's subject matter jurisdiction and presenting evidence on the jurisdictional issues. The trial court granted the plea and dismissed the case.

### *Governing Law*

Whether a trial court has subject matter jurisdiction is a question of law we

4

review de novo. *City of Houston v. Williams*, 353 S.W.3d 128, 133–34 (Tex. 2011). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. We may also consider evidence submitted to negate the existence of jurisdiction, and we must consider such evidence when necessary to resolve the jurisdictional issues. *Heckman*, 369 S.W.3d at 150. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Miranda*, 133 S.W.3d at 228. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150. If the evidence creates a fact question about a jurisdictional issue that overlaps the merits, then a plea to the jurisdiction should not be granted. *Miranda*, 133 S.W.3d at 227–28; *Gish v. City of Austin*, No. 03-14-00017-CV, 2016 WL 2907918, at *1– 2 (Tex. App.—Austin May 11, 2016, no pet.) (mem. op.).

In municipal civil service promotional bypass cases, a police officer may appeal to the Fire Fighters' and Police Officers' Civil Service Commission or to an independent hearing examiner. *See* Tex. Loc. Gov't Code §§ 143.010 (commission), 143.057(a) (hearing examiner). By choosing a hearing examiner, Williams waived his right to appeal to the judicial system unless the hearing examiner "was without jurisdiction or exceeded [his] jurisdiction or . . . the order was procured by fraud, collusion, or other unlawful means." *Id*. § 143.057(j); *see*

*also Gish*, 2016 WL 2907918, at *2. "[A] hearing examiner exceeds his jurisdiction when his acts are not authorized by the [Fire Fighters and Police Officers Civil Service] Act or are contrary to it, or when they invade the policy-setting realm protected by the nondelegation doctrine. *City of Pasadena v. Smith*, 292 S.W.3d 14, 21 (Tex. 2009). Hearing examiners have the same duties and powers as commissions in this type of proceeding. Tex. Loc. Gov't Code § 143.057(f). This includes conducting the hearing fairly and impartially, rendering a just and fair decision, and considering only the evidence submitted at the hearing. *Id*. § 143.010(g); *Smith*, 292 S.W.3d at 20.

## *Discussion*

Williams makes the following arguments as to why he contends the trial court had jurisdiction over his appeal of Helburn's decision regarding the promotional bypass: (1) Helburn's order was procured by unlawful means because the City sent evidence to Helburn prior to the hearing; (2) Helburn exceeded his jurisdiction by basing his decision on statutory provisions and an administrative policy that were preempted by the Meet and Confer Agreement; and (3) Helburn exceeded his jurisdiction by considering information that should have been expunged. Each of these grounds was mentioned to some degree in Williams's petition. If at least a fact question exists on any of these issues, the trial court erred in granting the plea to the jurisdiction. *See Gish*, 2016 WL 2907918, at *1–2.

**Submission of evidence outside hearing.** In his petition, Williams asserted that an attorney representing the City electronically submitted certain records to Helburn several days before the hearing and then presented the same records at the hearing. Williams asserts on appeal that Helburn's receipt of evidence outside of the hearing meant that the resulting order was procured by unlawful means. The City did not directly refute Williams's allegation with evidence but argues instead

6

that any transmission of evidence before the hearing was meaningless when the same evidence was offered at the hearing and nothing in Helburn's opinion or the record suggests that Helburn actually considered any evidence outside of the hearing.

As indicated above, a commission or hearing examiner's "decision [must] be made on evidence submitted at the hearing." *Smith*, 292 S.W.3d at 20. Accordingly, when the commission or a hearing examiner has considered evidence obtained outside the hearing, courts have concluded that this resulted in the order being procured by unlawful means. *See, e.g., Gish*, 2016 WL 2907918, at *2 (reversing grant of plea to the jurisdiction where hearing examiner considered post-hearing motion that presented facts that may not have been presented in the hearing); *Steubing v. City of Killeen*, 298 S.W.3d 673, 674–75 (Tex. App.—Austin 2009, pet. denied) (explaining that it was uncontested in the appeal that the commission's decision was procured by unlawful means where a commissioner sua sponte considered psychological and empirical studies outside of the hearing in making his determination); *Firemen's & Policemen's Civil Serv. Comm'n of City of Galveston v. Bonds*, 666 S.W.2d 242, 244–45 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd w.o.j.) (holding commission ruling was not "free of the taint of illegality" where commissioner acknowledged he came to hearing with packet of materials relevant to the case).

Unlike in the cited cases, however, there is no indication in this record that Helburn considered the documents that were reportedly electronically submitted before the hearing or even was aware that they had been submitted. Moreover, as Williams states in his petition, the same documents were then presented at the hearing.[6] Helburn clearly based his decision on evidence presented at the hearing.

---

[6] In his reply brief, Williams suggests that the evidence electronically submitted before

7

*See Smith*, 292 S.W.3d at 20. Consequently, Williams's argument regarding the evidence submitted before the hearing does not create a fact issue regarding whether Helburn's decision was procured by unlawful means.

**Preemption.** Next, Williams complains that Helburn based his opinion, at least in part, on an Austin Police Department policy and portions of the Local Government Code that were preempted by the Meet and Confer Agreement. Williams asserts that in doing so, Helburn exceeded his jurisdiction in the promotional bypass appeal.

The Meet and Confer Agreement is expressly authorized under chapter 143 of the Local Government Code. Tex. Loc. Gov't Code §§ 143.306–.307; *see also City of Austin Firefighters' & Police Officers' Civil Serv. Comm'n v. Stewart*, No. 03-15-00591-CV, 2016 WL 1566772, at *3 (Tex. App.—Austin Apr. 14, 2016, pet. denied) (mem. op.). As Williams points out, under article 13, section 1(e), the agreement provides that:

> It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.[7]

*See generally* Tex. Loc. Gov't Code § 143.307 (providing that meet and confer agreements preempt any contrary statute, ordinance, rule, or executive order).

---

the hearing was not then presented at the hearing. He does not cite any support for this suggestion, however, and it contradicts his own statement in his petition.

[7] Article 13 is entitled "Promotions," section 1 is entitled "Corporal/Detective," and subsection (e) is entitled "Preemption." A similar provision also appears in sections 2 through 4 of article 13, dealing, respectively, with promotions to the ranks of sergeant, lieutenant, and commander.

Williams first argues that Helburn exceeded his jurisdiction by upholding the promotional bypass of Williams under Austin Police Department Policy 919, because that policy was preempted by the Meet and Confer Agreement. In keeping with Local Government Code section 143.036(f), Policy 919 authorizes the Austin Chief of Police to bypass candidates on a promotional eligibility list for a "valid reason." The policy further lists nonexclusive factors that could support a valid reason determination, including whether the candidate in question had been subject to disciplinary action. Williams insists that Policy 919 "contravenes" the article 13, section 1(e) preemption clause and "denied Williams the [Meet and Confer Agreement's] procedural due process protections."

As set forth above, however, the article 13, section 1(e) preemption clause only preempts policies that are "in conflict" with the agreement and the procedures developed thereunder. Williams does not identify any specific conflict between the provisions of Policy 919 and any part of the Meet and Confer Agreement or related procedures. And we discern no such conflict. Accordingly, this argument is without merit.

Next, Williams asserts that article 13, section 14 of the Meet and Confer Agreement is controlling in this situation. That section provides in full as follows:

**Section 14. Vacancy Created by Indefinite Suspension**

a) Notwithstanding any provision in this Article or any provision in Local Government Code Chapter 143, an indefinite suspension of a police officer (despite any pending appeal) shall create a vacancy, but shall not expand the size of the classified service. In the event that an indefinite suspension is overturned on appeal and the officer is reinstated to active duty in the Department, the person who filled the most recent vacancy at that rank shall be the one who is demoted to the next lowest classification and placed on a reinstatement list, with such rights as prescribed in this Article.

b) The same result applies to all other promotions in lower

9

ranks which resulted from the first promotion and subsequent demotion.

Although his arguments are not entirely clear in regard to this provision, Williams appears to assert that the promotional bypass violated the provision and was therefore preempted or that Helburn therefore exceeded his jurisdiction in upholding the promotional bypass. Neither conclusion is well considered.

The purpose of article 13, section 14 is clear: when an officer is indefinitely suspended, it creates a vacancy to be filled, but if the suspension is then overturned on appeal and the suspended officer reinstated, the officer who filled the most recent vacancy at that rank is then demoted. Williams offers no interpretation of this provision—and we can imagine none—under which it would have required the police department to promote him upon his reinstatement. Article 13, section 14 requires reinstatement at the rank the officer was when he was suspended, not promotion. It neither contemplates nor addresses promotional bypasses or placement on a promotion eligibility list. Accordingly, this argument is also without merit.

Lastly under his preemption arguments, Williams asserts that article 13, section 17 of the Meet and Confer Agreement preempted Local Government Code section 143.036 in its entirety. As mentioned above, section 143.036(f) authorizes promotional bypass for a "valid reason." Article 13, section 17 of the Meet and Confer Agreement states in full that:

> It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 143.010; 143.014(f); 143.036; 143.072, and all provisions of

Subchapter B of Chapter 143 of the Texas Local Government Code. Contrary to Williams's representation, this provision does not expressly preempt the entirety of section 143.036; instead, it preempts the section only to the extent of conflict between the section and the Meet and Confer Agreement. Once again, Williams does not cite, and we do not discern, any relevant conflict between section 143.036 and the terms of the Meet and Confer Agreement. Accordingly, Williams's argument is without merit.

**Receipt of expunged information.** Williams further asserts that Helburn exceeded his jurisdiction by considering information that should have been expunged pursuant to a court order under chapter 55 of the Code of Criminal Procedure.[8] Tex. Code Crim. Proc. arts. 55.01-.06; *see also Tex. Dep't of Pub. Safety v. Nail*, 305 S.W.3d 673, 674 (Tex. App.—Austin 2010, no pet.). Williams complains at length regarding the inclusion of information regarding the H.E.B. incident—that he contends should have been expunged—in the promotional bypass memorandum he received from Chief Acevedo. Williams had indeed received an expunction order relating to the H.E.B. incident before the promotional bypasses occurred.

Interestingly, in his opinion, Helburn agreed with Williams that Chief Acevedo's promotional bypass memorandum contained information that was subject to the expunction order. Indeed, Helburn stated that: "The lack of attention to detail and duty on the part of Chief Acevedo . . . is obvious in this instance" and called the inclusion of the prohibited material "grossly improper." However,

---

[8] Williams raised this issue in his reply brief. Normally, we do not consider arguments raised for the first time in a reply brief, but we will do so here in the interest of justice because this issue concerns jurisdiction and Williams mentioned his concerns regarding the expunged material in his petition. *See generally Collins v. D.R. Horton-Texas Ltd.*, No. 14-17-00764-CV, 2018 WL 6684270, at *3 (Tex. App.—Houston [14th Dist.] Dec. 20, 2018, no pet. h.).

Helburn additionally emphasized that his decision was not based on any information regarding the H.E.B. incident that should have been expunged. In regards to consideration of that particular incident, Helburn noted that the fact of Williams's policy violations and resulting discipline was not subject to the expunction order. *See, e.g., Gomez v. Tex. Educ. Agency, Educator Certification & Standards Div.*, 354 S.W.3d 905, 918 (Tex. App.—Austin 2011, pet. denied) (explaining that the intent behind the expunction statute was not to eradicate all evidence of conduct underlying an expunged arrest and holding that the administrative law judge did not abuse her discretion in permitting testimony regarding such conduct) (citing *Ex parte S.C.*, 305 S.W.3d 258, 266 (Tex. App.—Houston [14th Dist.] 2009, no pet.), and *Bustamante v. Bexar Cty. Sheriff's Civil Serv. Comm'n*, 27 S.W.3d 50, 53 (Tex. App.—San Antonio 2000, no pet.)).

Helburn further noted that in his testimony, Acevedo "testified, credibly" that he considered Williams's suspension and policy violations in making the bypass determination. Based on that testimony, Helburn concluded that the information that was improperly included in the bypass memorandum "cannot be said to have influenced the decision to bypass" Williams.

What is clear from Helburn's discussion is that, contrary to Williams's assertion, Helburn himself did not consider any information that should have been expunged in reaching his decision. Williams indeed does not point to any suggestion in the record that Helburn exceeded his jurisdiction by considering information that should have been expunged. Helburn clearly and explicitly did not consider the expunged material and confined his review to nonexpunged information. *See Gomez*, 354 S.W.3d at 918. Accordingly, Williams has not created a fact issue on this ground.

## *Conclusion*

As explained above, by choosing a hearing examiner, Williams waived his right to appeal to the judicial system unless the hearing examiner "was without jurisdiction or exceeded [his] jurisdiction or . . . the order was procured by fraud, collusion, or other unlawful means." *See* Tex. Loc. Gov't Code § 143.057(j); *Gish*, 2016 WL 2907918, at *2. For the foregoing reasons, Williams has failed to show that at least a fact question existed on any jurisdictional issue. *See* id. at *1-2.[9] Accordingly, we overrule Williams's three issues challenging the grant of the City's plea to the jurisdiction.

We affirm the trial court's order.

/s/  Frances Bourliot
    Justice

Panel consists of Justices Christopher, Jewell, and Bourliot.

---

[9] In his briefing, Williams alleges in several places that Helburn's order was procured by fraud, but he does not develop this assertion beyond adding it to the arguments already discussed above. Consequently, Williams did not create a fact issue pertaining to fraud.

13